IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-10-416-S |
| | § | |
| MARY ELLIS | § | |

## MEMORANDUM AND ORDER

Defendant Mary Ellis ("Ellis") has filed a "Motion to Dismiss Indictment Based Upon Double Jeopardy" [Doc. # 341] ("Motion"), seeking dismissal of the indictment in this case, to which the Government filed a preliminary response [Doc. # 351]. After trial, Defendant filed a "Renewed Motion to Dismiss Indictment Based Upon Double Jeopardy Adding Exhibits From Both Cases" ("Renewed Motion") [Doc. # 406], to which the Government has responded in opposition [Doc. # 410]. After carefully considering each of Ellis's arguments, all matters of record, and the applicable authorities, the Court concludes that Ellis's Motions should be **denied**.

## I.     BACKGROUND

Ellis is a licensed vocational nurse ("LVN"), who provides skilled nursing services to sick and elderly people at home. At times pertinent to this case, Ellis was employed by Family Healthcare Services ("Family Services"), a home health care

agency.  Ellis worked with Family Services rendering skilled care nursing from approximately 2006 to 2009, and recruited patients for home based skilled nursing care for whom Family Services could bill Medicare.

Family Services began providing durable medical equipment ("DME") in 2007. In 2008, the founders separately incorporated the DME business ("Family DME"). Ellis was never employed by Family DME but recruited certain Medicare beneficiaries to whom the company provided DME.

The Government obtained two separate indictments against Ellis, one related to DME (the "DME case"), Criminal Case  No. 4:09-CR-421-S, and the instant case, which involves home based skilled nursing services (the "Skilled Nursing case").

### A.    DME case

The DME case, No. 4:09-CR-421-S, was tried before a jury in December 2010, with  Judge Gray Miller presiding.  Ellis was charged in that case with a single count of conspiracy to commit health care fraud under 18 U.S.C. § 1349, in connection with submission of false claims for DME between August 2007 and June 2009.  Also named in the DME case were five co-conspirators:  Clifford Ubani ("Ubani"), Princewill Njoku ("Njoku"), Rolandae Mitchell-Straughter, Ana Quinteros ("Quinteros"), and Michelle Turner.  The Government argued theory in the DME case that Ellis participated in the conspiracy by recruiting Medicare beneficiaries for whom

she received an illegal referral fee, a "kickback." The Government argued that Family Services and, later, Family DME provided (or claimed to provide) medically unnecessary "Arthritis Kits" to these beneficiaries[1] and fraudulently billed Medicare for the price of those kits.[2] Evidence presented at the December 2010 trial in the DME case established that DME must be both medically necessary and actually provided to a beneficiary before Medicare can be billed for the items.

The Government's DME case against Ellis involved her role in recruiting Medicare beneficiaries to receive medically unnecessary Arthritis Kits (DME). To prove Ellis's involvement in the DME conspiracy, the Government introduced checks payable to Ellis, which checks referenced "DME" or "Arthritis Kits" in the memorandum line (the "For" line);[3] a binder maintained by Ubani listing referral sources (including Ellis); and testimony of two co-conspirators, Quinteros and Ubani,

---

[1]    An Arthritis Kit consisted of numerous orthotic devices purportedly for the care of arthritis-related conditions, but which devices in fact are not medically appropriate for these conditions. The Arthritis Kit generally contained braces for major joints on all four limbs of a person's body and related accessories such as heat pads.  *See* DME Indictment [Doc. # 406-1], at 8.

[2]    The Government also alleged that Medicare was fraudulently billed for certain equipment that was never provided to a patient.

[3]    In general, Family Services made payments for skilled nursing services out of a Chase account, while Family DME used a Bank of America account.  Ubani's testimony in the DME trial indicated that funds were occasionally commingled, and payments were made from incorrect accounts if the appropriate account lacked funds.  *See* Ubani's Testimony in DME Trial [Doc. # 406-10], at 70-72.

that Ellis was paid to recruit Medicare beneficiaries to receive DME.  There was also evidence that Ellis knew the Arthritis Kits were medically unnecessary because she was an LVN.

The only material mention in the DME trial about Ellis's role as a home health care nurse was in connection with her opportunity to obtain Medicare beneficiaries' information for other conspirators to use for DME claims.  For limited Federal Rule of Criminal Procedure 404(b) purposes, the Government also offered in the DME trial Family Services checks to Ellis for recruiting beneficiaries for skilled nursing services.  The Government contended these payments for skilled nursing beneficiary referrals supported the inference that Ellis had criminal intent and an absence of mistake when she knowingly accepted the DME checks the Government claimed were kickbacks.   In addition, in rebuttal to arguments made by Ellis's counsel, the Government introduced a little evidence about Ellis's fraudulent activities as a skilled nurse with Family Services.[4]

The jury in the DME case found Ellis "not guilty" of the charge of conspiring to defraud Medicare in conjunction with DME.

---

[4]     Ellis's counsel raised the subject during cross-examination of co-conspirator Ana Quinteros.  After the cross, counsel for the Government stated (at the sidebar) that the Government had not intended to address the home health care fraud, but Ellis's counsel's questions of Quinteros required some clarification. Judge Miller agreed that Defendant's counsel had opened the door to such questioning and allowed it to proceed.  *See* DME Trial Transcript [Doc. # 304 in 4:09-CR-421], at 457-58.

**B.**     **Skilled Nursing Case**

In the Skilled Nursing case tried before this Court, a Superseding Indictment [Doc. # 129] charges that fourteen defendants participated in a conspiracy to commit health care fraud concerning the provision of home based skilled nursing services (sometimes called "home health services").   Ellis is charged in seven counts: conspiracy to commit health care fraud under 18 U.S.C. § 1349 (Count 1); conspiracy to receive health care kickbacks under 18 U.S.C. § 371 (Count 2); three counts of solicitation or receipt of health care kickbacks under 42 U.S.C. §§ 1320a-7b(b)(1) and (b)(2) (Counts 3, 4 and 5); and two counts of making false statements for use in determining rights for benefit and payment by Medicare under 42 U.S.C. §1320a-7b(a)(2) (Counts 20 and 21).[5]

The Government's theory in the Skilled Nursing case is that from 2006 to 2009, Ellis conspired with others at Family Services to fraudulently bill Medicare for providing skilled nursing services that were either not provided or were not medically

---

[5]     Count 1 names nine defendants – Clifford Ubani, Ezinne Ubani, Princewill Njoku, Caroline Njoku, Ellis, Michelle Turner, Adelma Casa-Sevilla, Cynthia Garza-Williams and Sammie Wilson.   Count 2 names Clifford Ubani, Princewill Njoku, Caroline Njoku, Ellis, Turner, Garza-Williams, Wilson, Margaret Pleasant, Erica Walker, Terrie Porter, Estella Joseph, and Florida Holiday Island with violating 18 U.S.C. § 371 by conspiring to violate the anti-kickback statute, 42 U.S.C. §1320a-7b(b), as well as substantive violations of that anti-kickback statute (Counts 3 through 19).  Counts 20 and 21 charge Ezinne Ubani, Princewill Njoku and Ellis with making false statements pursuant to 42 U.S.C. §1320a-7b(a)(2). Princewill Njoku was charged with an additional false statement violation in Count 22.

necessary.  A premise of the health care fraud conspiracy charge (Count 1) is that home health care services are appropriately billed to Medicare only when a patient is (i) under the care of a physician; (ii) homebound; and (iii) in need of skilled nursing services.  Also, the services for which billings are submitted must actually be rendered to the patient beneficiary.  The evidence at the Skilled Nursing trial demonstrated that Ellis was engaged in fraudulent acts associated with her duties as a  skilled nurse. Family Services' medical files revealed that there were substantial inconsistencies in Ellis's patient notes about visits to patients for whom she claimed to render home skilled nursing.[6]  Ellis's visit notes also contained material misstatements about the patients' medical conditions at the times she visited.  For instance, Harold Anderson testified that he was not homebound and did not have health issues that required Ellis's skilled nursing care at home.[7]  Mr. Anderson and some of Ellis's other patients testified that when she visited, she took the patient's vital signs but did not engage in any actual skilled nursing.   Indeed, Ellis testified that, with the exception of the patients' vital signs reported in the patient visit notes (Skilled Nursing Trial Exhibit 27), those notes did not reflect the patient's actual condition.  Ellis conceded that her visit notes generally reflected patients' conditions on the pre-existing "plans of care"

---

[6]      *See, e.g.*, Skilled Nursing Trial Exhibit 27

[7]      *See* Skilled Nursing Trial Exhibits 24F and 27.

submitted by Family Services to Medicare, which plans were used to justify payments for home based skilled nursing care.  The Government also introduced summary charts of Ellis's patient visit notes.  The summaries demonstrated that Ellis purportedly treated multiple patients at the same time, and often claimed she visited patients when she was scheduled to work as a school nurse at Texas Serenity Academy.[8]  In sum, the Government's evidence against Ellis regarding the conspiracy to commit health care fraud (Count 1) primarily involved Ellis's own fraudulent conduct in misrepresenting her own nursing work and her patients' need for home health services.

The Government introduced evidence of Ellis's patient recruiting activities to prove a separate conspiracy (Count 2), a conspiracy to receive unlawful kickbacks under 18 U.S.C. § 371.  The most significant proof of the skilled nursing kickback conspiracy was numerous handwritten Family Services' checks containing notations about the number of referred patients, which correlated to the amount of the check.[9]  In the Skilled Nursing case, these Family Services kickback checks were direct evidence of Ellis's involvement in the kickback conspiracy (Count 2) and on the

---

[8]     *See* Skilled Nursing Trial Exhibit 29.

[9]     Ellis generally received $400 for each referral of a new Medicare beneficiary for whom Family Services could bill for home based skilled nursing care, and $200 for each recertification of those patients for a second or subsequent period of home health care.

substantive kickback counts (Counts 3, 4 and 5).  These checks also were relevant to Ellis's motive in connection with the fraud conspiracy charged in Count 1.[10]

The jury convicted Ellis on all counts in the Skilled Nursing case.

Pre-trial, Ellis moved to dismiss Counts 1, 2, 3, 4 and 5 of the Superseding Indictment in the Skilled Nursing case on the grounds of double jeopardy and issue preclusion.  *See* Motion [Doc. # 341]; Renewed Motion [Doc. # 406].  Ellis has not moved for dismissal of Counts 20 and 21.  The Motions are now ripe for decision.

## II.    DISCUSSION

### A.    Double Jeopardy

#### 1.    Legal Standard

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  In general, the Double Jeopardy Clause provides for protection in three categories:   (1) against a "second prosecution for the same offense after acquittal"; (2) against a "second prosecution for the same offense after conviction"; and (3) "against multiple punishments for the same offense."  *United States v.*

---

[10]    The skilled nursing kickback checks were different checks from the kickback checks she received in the DME scheme.

*Rabhan*, 628 F.3d 200, 204 (5th Cir. 2010) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)).

The Double Jeopardy Clause bars a second punishment [or prosecution] for the same 'offense,' not a second punishment [or prosecution] for the same conduct." *United States v. Cruce*, 21 F.3d 70, 73 (5th Cir. 1994) (citing *United States v. Dixon*, 509 U.S. 688, 695-96 (1993), and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).[11] Courts use the rule of construction set forth in *Blockburger* "under which we presume that when the legislature writes two criminal statutes, and each statute contains an independent element from the other statute, it intends to define two separate offenses that generally entail two punishments." *Id.* (citing *Missouri v. Hunter*, 459 U.S. 359, 367 (1983)).  As the Fifth Circuit has stated:

> the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each  provision requires proof of a fact which the other does not.

---

[11]     In *Blockburger*, the United States Supreme Court held that "even though the defendant only made one sale of narcotics, double jeopardy principles did not preclude a second punishment for the same conduct because that conduct constituted two separate 'offenses' under the same elements test." *Cruce*, 21 F.3d at 73.  The focus is on the "offense" for which the defendant was prosecuted, not the conduct encompassed by those offenses.

*United States v. Nichols*, 741 F.2d 767, 772-73 (5th Cir. 1984) (quoting *Blockburger*, 284 U.S. at 304.)[12]

Where the government charges two offenses under the same statute, for instance under conspiracy laws such as 18 U.S.C. § 371 or § 1349, "we must determine, in our double jeopardy analysis, if the offenses are the same in 'fact.'" *Cruce*, 21 F.3d at 75 (citing *United States v. Marable*, 578 F.2d 151, 153 (5th Cir. 1978), *overruled on other grounds* by *United States v. Rodriguez*, 612 F.2d 906 (5th Cir. 1980) (en banc), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333 (1981), and *Blockburger*, 284 U.S. 301-02). "The central inquiry in a double jeopardy claim involving conspiracies is whether one agreement and one conspiracy exists or more than one agreement and more than one conspiracy exist." *Rabhan*, 628 F.3d at 204; *see Cruce*, 21 F.3d at 75; *see also Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.").

"The defendant carries the initial burden of establishing 'a prima facie nonfrivolous double jeopardy claim' that the two conspiracies charged are in fact a

---

[12]  "Because the Double Jeopardy Clause focuses on the 'offense' for which the defendant is prosecuted and convicted, the intent of the legislature is important because it is the legislature that defines the 'offense' and prescribes the punishment for that offense." *United States v. Cruce*, 21 F.3d 70, 73 (5th Cir. 1994) (citing *Whalen v. United States*, 445 U.S. 684, 689 (1980)).

single conspiracy and therefore charge a single offense." *Rabhan*, 628 F.3d at 204 (quoting *United States v. Stricklin*, 591 F.2d 1112, 1117-18 (5th Cir. 1979)); *see generally United States v. Goff*, 847 F.2d 149, 169 (5th Cir. 1988). "After a defendant establishes a prima facie nonfrivolous case that a single conspiracy exists, the burden of persuasion shifts, and the government must show by a preponderance of the evidence that the defendant has been charged in separate conspiracies." *Id.*

"The defendant can satisfy his prima facie case by introduction of the indictment from his previous case, or by offering other record material and evidence normally available at the pretrial stage." *Id.* at 204-05.[13] "To meet its burden to rebut the prima facie case, the government 'may present however much or little evidence . . . as it deems advisable, subject, of course, to dismissal of the indictment if not enough evidence to rebut the defendant's prima facie showing is introduced.'" *Id.* at 205 (quoting *Stricklin*, 591 F.2d at 1119).

## 2.   Analysis

---

[13]    In *Rabhan*, the Fifth Circuit noted the variety of information it has used to inform its analysis of double jeopardy claims. *See, e.g., United States v. Vasquez-Rodriguez*, 978 F.2d 867, 870 (5th Cir. 1992) (using indictment and evidence at trial); *United States v. Kalish*, 690 F.2d 1144, 1147, 1149-50 (5th Cir. 1982) (using trial record, signed pre-trial statements, and grand jury testimony); *United States v. Futch*, 637 F.2d 386, 390 (5th Cir. 1981) (using live testimony). In *United States v. Atkins*, we stated that none of our cases suggested a limitation to sources a court could turn to for facts in the double jeopardy analysis. 834 F.2d 426, 433 (5th Cir. 1987), overruled on other grounds by *Taylor v. Whitley*, 933 F.2d 325 (5th Cir. 1991).

### a.    Section 1349 Conspiracies

In this case, Ellis primarily seeks protection against a second prosecution for the same offense after acquittal.  The primary potentially overlapping charge between the Superseding Indictment in the instant case and the DME case is conspiracy to commit health care fraud under 18 U.S.C. § 1349.  As noted, where the Government charges two offenses under the same statute, the Court must determine if the offenses are the same in "fact."  *Cruce*, 21 F.3d at 75.

In order to make a *prima facie* showing of double jeopardy under *Marable*, Ellis points to pleadings and some evidence establishing that: (a) the DME conspiracy and Skilled Nursing conspiracy overlap in their respective time periods;  (b) the Skilled Nursing conspiracy commenced in 2006, when Family Services started providing home nursing services, and lasted to 2009, while the DME conspiracy took place between 2007 and 2009; (c) Ubani and Njoku, Family Services' owners, were charged as co-conspirators in both cases; (d) both indictments charged Ellis with "conspiracy to commit health care fraud" under 18 U.S.C. § 1349; and (e) both the conspiracies took place for some period of time in Family Services' base of operations, an office located at 8313 Southwest Freeway, Suite 109, Houston, Texas.  The Court concludes that Ellis has presented sufficient evidence to satisfy her *prima facie* burden to show that the conspiracies charged in the DME and Skilled Nursing cases may constitute

a single conspiracy.  *See Rabhan*, 628 F.3d at 208.  Accordingly, the burden of persuasion shifts to the Government to demonstrate that Ellis was charged in the two cases with participating in separate conspiracies.   The Court concludes that Government has met its burden.[14]

The inquiry is whether the two conspiracy charges are the charges for the same "offense" in "fact" because the charges arise from a single conspiracy.  *See Rabhan*, 628 F.3d at 204.  "All of the *Marable* factors must be considered together because no single factor is determinative."  *Rabhan*, 628 F. 3d at 205 (referring to *Marable*, 578 F.2d at 154).  The five *Marable* factors are:

> (1) time [spans of the conspiracies], (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

---

[14]   In *United States v. Stricklin*, the Fifth Circuit reasoned that once the defendant makes a *prima facie* case of Double Jeopardy, the burden of proof should shift to the Government because the Government retains control over the indictment and evidence at the pre-trial stage.  591 F.2d at 1118.  The Government now argues that since the Double Jeopardy issue was briefed post-trial, the relevant theories and evidence have been vetted and explored by both parties, making the shift of the burden of proof to the Government unnecessary.  *See* Government's Response [Doc. # 410], at 10 (citing *United States v. Dortch*, 5 F.3d 1056, 1061 (7th Cir. 1993)); *but see United States v. Mallah*, 503 F.2d 971, 986 (2d Cir. 1974).  The Government has presented and the Court is aware of no Fifth Circuit authority on this point. Nonetheless, the Court need not resolve this question because the Government has met its burden to show that the conspiracy charged in the instant case is different from that charged in the DME case.

578 F.2d at 154.[15]

**Time Spans of the Conspiracies**.  –  "An overlap in time periods between two alleged conspiracies favors a finding of a single conspiracy, especially when that overlap is substantial." *Rabhan*, 628 F.3d at 205 (citing *United States v. Winship*, 724 F.2d 1116, 1126 (5th Cir. 1984)).  The time period of the Skilled Nursing conspiracy subsumes the period of the DME conspiracy, with an overlap of almost two years. This overlap in time is substantial.[16]  The time factor *per se* does not favor a finding of the existence of two separate conspiracies.

---

[15]   The Government correctly points out that Ellis, in her motion to admit Ubani's testimony from the DME trial, argued that "[t]he testimony showed *two purposes and thus two conspiracies* that were *dependent upon each other*." *See* Government's Response [Doc. # 410], at 10 (quoting Defendant Mary Ellis's Motion To Publish The Entire Testimony Of Clifford Ubani From Prior Proceeding (4:09-CR-421-S) [Doc. # 364], at 3).  Ellis thus in fact conceded that different conspiracies and offenses were charged in the DME and Skilled Nursing cases, respectively.  *See id.* at 10-11. Nevertheless, the Court does not rely on this concession and instead engages in the traditional double jeopardy analysis as applied to the DME and Skilled Nursing cases.

[16]   However, as explained hereafter in relation to another factor, the evidence of creation of the schemes suggests two separate conspiracies.  The Skilled Nursing conspiracy began in April 2006, when Family Services started providing home skilled nursing services.  The DME conspiracy did not begin until August 2007, when Ubani and Njoku first applied to Medicare for a separate provider number to be used for billing DME.  The DME conspiracy thus was initiated and well underway a year and a third after commencement of the Skilled Nursing conspiracy. There is no evidence that, at the beginning of the Skilled Nursing conspiracy, any defendant had conceived of a DME business.

*Co-Conspirators*. – "An overlap in personnel participating in the conspiracy, particularly in key personnel, indicates a single conspiracy." *Rabhan*, 628 F.3d at 205 (citing *United States v. Levy*, 803 F.2d 1390, 1395 (5th Cir. 1986)).  In the cases at bar, Njoku and Ubani were principals in the companies at the core of the health care conspiracy charges in the two indictments.  In addition to these two founders of the businesses, Ellis and co-conspirator Michelle Turner, another recruiter, were indicted in both the DME and Skilled Nursing cases.[17]  On the other hand, there is no evidence that the other ten defendants in the Skilled Nursing case were involved in the DME business or conspiracy.[18]  While there is overlap of some of the conspirators in addition to Ellis, the existence of so many non-overlapping defendants makes this factor neutral regarding the existence of two separate and distinct conspiracies.

*Statutory Offenses Charged*. – In both prosecutions, Ellis was charged with conspiracy to commit health care fraud under 42 U.S.C. § 1349.  While the two

---

[17]   It appears that Ana Quinteros (who was not indicted in the Skilled Nursing case) also was a conspirator in both businesses, although the vast majority of her work was in the DME context.

[18]   Indeed, there is no evidence that Ezinne Ubani or Caroline Njoku, who were the wives of the Family Services principals and who were intimately involved with the skilled nursing fraud, had any relation to or involvement with the DME business. They were not indicted in the DME case.

§ 1349 charges against Ellis involve materially distinct facts and theories of liability, this factor does not support a finding of two different conspiracy charges.[19]

***Overt Acts and Nature & Scope of the Agreement***.  –  Since the conspiracies in question were both charged under 18 U.S.C. § 1349, no overt acts were required to be alleged or proven.  Ellis instead argues that the similarity in phrasing of the two indictments favors a finding that both indictments charge the same conspiracy.  The Court is not persuaded.  The phrasing of the charges in these indictments essentially tracks the language of the statute and the required generic elements of proof.  *See Marable,* 578 F.2d at 153 ("[T]he precise bounds of a single conspiracy seldom will be clear from the indictment alone.").  The language of the charging instruments is not probative in this case.

---

[19]    In the DME case, Ellis faced only one criminal violation, conspiracy under § 1349 for her conduct in recruiting Medicare beneficiaries for fraudulent DME claims.  The Skilled Nursing indictment, on the other hand, charges Ellis with violation of 18 U.S.C. § 371 for conspiracy to receive health care kickbacks as well as three counts of receipt of health care kickbacks in violation of 42 U.S.C. §§ 1320a-7b(b)(1) and (b)(2) based on referral of skilled nursing (*not* DME) beneficiaries.  She also is charged with and convicted of making false statements for determination of Medicare payments in regard to the need for home-based skilled nursing in violation of 42 U.S.C. § 1320a-7b(a)(2).  Not one of these charges or the underlying facts was involved in the DME case.  While "[a]dditional charges in one case may still lead to a finding that there is only one conspiracy, particularly when 'the statutes that do not overlap are related,'" *Rabhan*, 628 F.3d at 208 (quoting *Levy*, 803 F.2d at 1392), the existence of additional charges in one of the cases may be considered by the Court in determining the number of conspiracies charged.

To evaluate the nature and scope of the agreement charged in the § 1349 counts in each case, the Court considers the evidence presented at each trial.[20]  As noted, the only overlapping evidence between the two trials was the limited testimony of Quinteros elicited in response to the defense opening the door regarding the skilled nursing matters, and the kickback checks to Ellis for home health patient referrals, checks introduced as Rule 404(b) evidence only and not argued by the Government to the jury.

The crux of the DME case against Ellis was her recruiting of Medicare beneficiaries for whom Arthritis Kits could be billed.  Because Ellis's role in the DME trial was as a paid recruiter, the key evidence consisted of the kickback checks to Ellis for the DME beneficiary referrals and Ubani's referral binder sheets listing DME patients attributed to Ellis.  None of these exhibits was introduced in the Skilled Nursing case, and was not relevant there.

The theory and evidence in the Skilled Nursing case stands in stark contrast. That case involved home health care services, and had nothing to do with Family Services' provision of or billings for orthodics (*e.g.*, the Arthritis Kits).  Rather, in regard to the Skilled Nursing case § 1349 health care fraud conspiracy charge, the

---

[20]     The Court deferred ruling on the double jeopardy issue until after trial because Ellis did not claim a bar with respect to Counts 20 and 21 in the second case.  There was no objection to this procedure.

Government presented evidence that Ellis made vast numbers of serious false statements about her patients' health conditions and the Medicare-funded home based nursing services she claimed to provide, services shown to be for patients she knew were not qualified to receive such benefits.  The bulk of the evidence in the Skilled Nursing trial — patient medical files, testimony of beneficiaries who did not qualify for home health care (some of whom were visited by Ellis), and summary charts showing substantial overlap and inconsistencies among Ellis's claimed visits to different beneficiaries — were not presented during the DME trial.

Moreover, the evidence demonstrated that there were two fraudulent businesses, one that submitted false Medicare claims for Arthritis Kits (the DME case) and another that submitted false Medicare claims for home skilled nursing care (the Skilled Nursing case).  While Njoku and Ubani each profited from both enterprises for some period of time, the evidence demonstrates that Njoku, a nurse, ran the skilled nursing business, and Ubani ran the DME business.  Indeed, in 2008, less than a year after commencement of the DME business, Ubani and Njoku formalized this division by separately incorporating Family DME, a company in which Njoku had no ownership.  The entities maintained largely separate bank accounts, separate records, and separate referral logs to identify each recruiter's Medicare beneficiaries.  There is no evidence that most of the many defendants in the Skilled Nursing case were

involved in the DME business or conspiracy.  Finally, the DME kickback checks and Ellis's recruitment of DME beneficiaries were not introduced as evidence in the Skilled Nursing trial at all.  This factor accordingly weighs strongly in favor of the existence of two separate and distinct conspiracies.[21]

*Location.*  –  The Government concedes that the location of the wrongful acts weighs in favor of finding a single conspiracy.  The business headquarters of the two conspiracies initially was the same office, although the businesses were operated separately.

***Conclusion on Double Jeopardy on the § 1349 Conspiracy (Count 1).***  –  Having weighed the relevant factors, the Court concludes that, despite the partial overlap of time, location, conspirators and statutory offenses alleged, the nature and scope of the parties' agreements are materially different and these differences overshadow the similarities.  The Government accordingly has met its burden to show that the conspiracy alleged and the evidence introduced in the DME case were materially different from the charges and proof in the Skilled Nursing case.  Double jeopardy, therefore, does not bar the Skilled Nursing § 1349 conspiracy charge.

### b.  Other Counts in the Skilled Nursing Indictment

---

[21]     The substantial difference between the evidence in the respective cases at bar distinguishes *Rabhan*, where most of the evidence introduced in the second trial was used in the first case.

Although unclear from the briefing, it appears that Ellis also argues that double jeopardy bars prosecution of Counts 2 through 5 in the Skilled Nursing Superseding Indictment.   Count 2 charges a § 371 conspiracy to violate the anti-kickback statute, 42 U.S.C. §§ 1320a-7b(b), and Counts 3, 4 and 5 are substantive violations of that anti-kickback law, none of which statutory offenses were alleged in the DME case. Analyzing these charges under the *Blockburger* doctrine, there is no double jeopardy bar because these separate offenses each require proof of elements different from those in § 1349.   Moreover, as detailed above factually, these charges rely on materially different evidence from the proof adduced in the DME case.   The subject of these counts are payments to Ellis for Medicare beneficiaries' referrals for which Family Services could bill Medicare for in-home skilled nursing.   These counts have nothing to do with the kickbacks that Ellis allegedly received for referring patients for DME through Family Services or Family DME.   While there is partial overlap as to the time, co-conspirators, and location, the statutory offenses alleged and the nature and scope of the respective conspiracies are different.   Ellis's double jeopardy contentions regarding Counts 2, 3, 4 and 5 are without merit.[22]

---

[22]      Ellis does not meaningfully argue this theory.   The Court also deems it waived.

**B.**   <u>**Issue Preclusion**</u>

Ellis asks the Court to dismiss Counts 2 through 5 of the Skilled Nursing

Indictment on the grounds that these charges are barred by the doctrine of issue

preclusion.  The Supreme Court has "squarely held that the Double Jeopardy Clause

precludes the Government's relitigation of any issue that was *necessarily decided* by

a jury's acquittal in a prior trial."  *Yeager v. United States*, 129 S. Ct. 2360, 2366

(2009) (emphasis added).  Further,

> Where a previous judgment of acquittal was based upon a general
> verdict, as is usually the case, this approach requires a court to examine
> the record of a prior proceeding, taking into account the pleadings,
> evidence, charge, and other relevant matter, and conclude whether a
> rational jury could have grounded its verdict upon an issue other than
> that which the defendant seeks to foreclose from consideration. The
> inquiry must be set in a practical frame and viewed with an eye to all the
> circumstances of the proceedings.

*Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (internal quotations omitted).

The only potential issue Ellis identifies in her Motion that she claims was

necessarily decided by the jury in the DME case is the question of her intent regarding

the unlawful acceptance of kickbacks or referral fees.  She argues that the "critical

issue of ultimate fact" in both cases was "[w]hether or not [Defendant] had the

criminal intent to conspire with others to defraud Medicare by submitting false or

fraudulent documents to induce payments . . . ."  She further argues that the same

checks were used as circumstantial evidence in both cases to show her agreement to

defraud Medicare.  Ellis deduces that the jury's acquittal in the DME case shows that "Mary Ellis did not knowingly participate in a scheme to defraud a health care benefit program in connection with the delivery of, or payment for, benefits, items *or* services."[23]  Ellis therefore appears to argue that her acquittal means the jury in the DME case necessarily decided that she had not intended to conspire to commit *any* health care fraud.

The Court is not persuaded.  The inquiry is whether "an issue of ultimate fact has once been determined by a valid and final judgment."  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  The jury in the DME case did not necessarily decide as a factual matter any issue related to the skilled nursing conspiracy.  The focus and vast majority of the evidence in the DME case had nothing to do with the skilled nursing scheme. The DME jury was never charged by the court to consider Ellis's skilled nursing conduct or the accuracy of her patient visit reports, and the DME jury could not have decided Ellis's intent to defraud Medicare in connection with her skilled nursing services.  The Government's use of the Skilled Nursing checks as Rule 404(b) evidence and Quinteros's brief testimony about Family Services' skilled nursing business does not change this conclusion.  Moreover, the evidence in support of the

---

[23]     Defendant's Renewed Motion [Doc. # 406], at 26 (citing Jury Instructions in H-09-CR-00421) (emphasis in original).

§ 371 recruiting conspiracy for skilled nursing patients did not involve the payments to Ellis for DME patients.  The payments that were the subject of the DME charge were entirely different from the criminal charges in the Skilled Nursing case.

There simply is no fact issue that was posed to the DME jury about Ellis's intent that necessarily was decided and thus precludes any charge in the Skilled Nursing case.  As a result, this Court concludes that no issues in Counts 2 through 5 of the Superseding Indictment in the Skilled Nursing case are barred by the doctrine of issue preclusion.

## III.   CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion to Dismiss Indictment [Doc. # 341] and Renewed Motion to Dismiss Indictment Based Upon Double Jeopardy Adding Exhibits From Both Cases [Doc. # 406] are **DENIED**.

SIGNED at Houston, Texas, this 25th day of **August, 2011**.

_____
Nancy F. Atlas
United States District Judge